UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KLAUBER BROTHERS, INC.,

                Plaintiff,

      v.

TARGET CORPORATION and AFR APPAREL INTERNATIONAL, INC. d/b/a PARISA USA,

            Defendants.

14 Civ. 2125

**OPINION**

This is a copyright case concerning a design in lace. Plaintiff, Klauber Brothers, Inc. ("Klauber"), is a New York corporation that specializes in the design and supply of lace products. Defendant Target Corporation ("Target") is a retailer incorporated in Minnesota. Defendant AFR Apparel International, Inc. d/b/a Parisa USA ("Parisa") is a lingerie maker incorporated in California.

Defendants move for summary judgment dismissing plaintiff's claims. The motion is denied.

## Background

In 2004, plaintiff's in-house lace designer designed the lace at issue in this case, known as the 7725 Design. (SOF ¶ 7; Ex. 1.) She based the 7725 Design in part on earlier designs she had made for Klauber, known as the 7719 Design and the 1065 Design. (SOF ¶ 10; Ex 2.) In the process

of making the 1065 Design, she studied a book of old public domain designs, including a rose design dating from the year 1900 (the "1900 Design"). (SOF ¶ 10; Ex. 4.)

The 7725 Design incorporates elements including a flower, leaves, frond-like "scroll" figures, and a scalloped edge. (Ex. 1.) The design was intended to be made on a Raschel lace machine and used as a two and three-eighths inch wide undergarment waistband. (Citrone Tr. at 41.)

On or about April 26, 2006, Klauber applied to register a copyright in the 7725 Design. (SOF ¶ 1, 3.) The 7725 Design is a design for a two-and-three-inches-wide strip of lace. (SOF ¶ 3.) In the application, Klauber stated that the 7725 Design had been created in 2005, and Klauber did not list any prior works upon which the 7725 Design was based. (SOF ¶¶ 7, 47.) The application was granted, resulting in the '515 Registration. On February 27, 2015, Klauber filed a supplement to the '515 Registration stating that the 7725 Design was "inspired" by two prior Klauber works: the 1065 Design and the 7719 Design. (Klauber Decl. ¶ 12; Ex. 3.) The supplement also corrected the date of creation of the 7725 Design to 2004.

In 2008, Target developed a program called the "panty bin" program. (SOF ¶ 50.) Target's designer in charge of the program chose the 7725 lace for waistbands of undergarments to be marketed through the program. (SOF ¶ 50.) Target chose two manufacturers to make the

2

undergarments using Klauber lace: defendant Parisa and Asia-based manufacturer Thai Onono (SOF ¶ 53.)  Initially, Parisa and Thai Onono produced undergarments using Klauber's 7725 lace, but subsequently a Chinese lace company, Sei Hoi, "re-engineered" the 7725 lace.  (SOF ¶ 55.) Beginning around 2010 or 2011, Target began selling panties manufactured by Parisa featuring the Sei Hoi lace.  (SOF ¶¶ 56-62.)

## Discussion

A moving party is entitled to summary judgment when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1987).  In demonstrating the existence of a genuine issue of material fact, the nonmoving party may not rest upon mere allegations or conclusory statements, but must go beyond the pleadings with proper documentary evidence.  See Davis v. New York, 326 F.3d 93, 100 (2d Cir. 2002).

In the complaint, plaintiff alleges copyright infringement.  "Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying." Castle Rock Entm't, Inc. v. Carol

Publ'g Group, Inc., 150 F.3d 132, 137–38 (2d Cir.1998) (internal quotation marks omitted).   In their motion for summary judgment, defendants mount challenges to both the validity of the copyright and the allegation of copying, which the court will now address.

### A. Whether the '515 Copyright Registration is Enforceable

Defendants argue that plaintiff's '515 Registration for the 7725 Design is unenforceable because plaintiff failed to disclose to the Copyright Office certain non-protectable elements of the 7725 Design.  Specifically, defendants contend that plaintiff failed to make four disclosures: (1) that the 7725 Design was a derivative work based on earlier Klauber designs, the 7719 and 1065 Designs, (2) that the main flower in the 7725 Design incorporated public domain elements, namely a detail from a flower in the 1900 Design, (3) that the scalloped edges of the 7725 Design were a functional technique in lace-making, not a proprietary design element, and (4) that the scrolls in the 7725 Design differed from common floral lace design elements in only non-consequential ways.  Defendants contend further that this information would have been relevant to the Copyright Office in determining the originality and registrability of the 7725 Design, and that plaintiff willfully concealed this information.

Registered copyrights are presumed valid pursuant to 17 U.S.C. § 410(c).  Moreover, where a plaintiff fails to disclose facts to the Copyright

Office, a copyright may not be invalidated unless (1) the failure was knowing and willful, and (2) the omitted information might have caused the Copyright Office to reject the registration.  Eckes v. Card Prices Update, 736 F.2d 859, 861-62 (2d Cir. 1984).

Defendants have not established that plaintiff willfully failed to disclose any information.  Defendants point to a statement by Mark Klauber, the signatory of the application for the '515 Registration, indicating that he knew at the time of application that the 7725 Design referred to older designs.  (Klauber Tr. at 30-31.)  Defendants also point to the testimony of the designer of the 7725 Design, wherein she states that she "believes" that Mark Klauber knew that the 7725 Design referenced prior Klauber designs.  (Citrone Tr. at 82.)  This merely establishes that Mark Klauber was generally aware of the design's roots in older designs at the time of the copyright application.  It does not show that he understood or believed that these facts should have been disclosed to the Copyright Office, and it cannot support a conclusion that plaintiff willfully failed to disclose information.  Indeed, Mark Klauber has submitted a sworn declaration attesting that he believes in good faith that he did not, and does not, need to disclose any additional information to the Copyright Office.  (Klauber Decl. ¶¶ 4-8.)

In February, 2015, plaintiff provided corrections to the Copyright Office, slightly changing the date of the completion of the 7725 Design and indicating that the work was "inspired" by two previous Klauber designs. This, too, tends to suggest that any omission was inadvertent. R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 56 ("[T]he Copyright Office has a procedure for correcting innocent and inadvertent misstatements, and . . . courts generally refrain from invalidating certificates based on such misstatements.")

Further, had plaintiff submitted a flawless application in 2006, the Copyright Office would have been very unlikely to reject it.  Plaintiff likely should have disclosed that the 7725 Design was based upon earlier Klauber designs, as they ultimately did in the 2015 correction.  But as discussed infra in Section B, the other disclosures that defendants allege plaintiff should have made (i.e., that the 7725 Design incorporates public domain elements, that the scallop design is a "technique" rather than a proprietary design, and that the scroll elements are unoriginal) are subject to reasonable debate.  And even if they are all true, they do not establish that the 7725 Design is unprotectable in its entirety.

Under these circumstances, the court cannot hold as a matter of law that the '515 Copyright Registration is unenforceable due to plaintiff's failure to disclose unprotectable elements in the 7725 Design.

**B. Whether the 7725 Design Lacks Sufficient Originality to be Protectable Under the Copyright Act**

Defendants argue that various elements of the 7725 Design are unprotectable because they are either taken from public domain or previous designs, or are dictated by functional requirements. Further, defendants argue that any elements not falling into those categories, and the arrangement of elements in the whole design, lack sufficient originality to be protectable.

A design must be original to be protectable under the Copyright Act. 17 U.S.C. § 102. Elements of a design that are "slavishly or mechanistically" copied from either the public domain or previous works are not entitled to copyright protection. See L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490 (2d Cir. 1976); Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 763 (2d Cir. 1991). However, for the original portions of a work to be copyrightable, "only an unmistakable dash of originality need be demonstrated, [and] high standards of uniqueness in creativity are dispensed with." Id. at 764-65 (citing Weissman v. Freeman, 868 F.2d 1313, 1321 (2d Cir. 1989). The requisite "dash of originality" may be present in arrangements of unprotectable elements. See Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1003-04 (2d Cir. 1995) (citing Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340 (1991)).

Defendants propose that the 7725 Design consists of five repeating elements: (1) two scrolls, (2) a main flower, (3) two leaves extending from the main flower, and a scalloped edge comprised of (4) a white scalloped pattern, and (5) a dark scalloped pattern.  (Def.  R. 56.1 Statement ¶ 15.) Plaintiff disputes this characterization, observing that it is an oversimplification.  However, it is a reasonable framework for an analysis of the 7725 Design.

### 1. The Scrolls

Defendants contend that the curly frond-like figures called "scrolls" in the 7725 Design are not original.  Indeed, it is undisputed that countless floral lace designs predating the 7725 Design have scrolls.  Defendants also observe that the two-scroll configuration in the 7725 Design bears resemblance to a two-scroll configuration in plaintiff's older 7719 Design.

Plaintiff counters that the scrolls in the 7725 Design are not rote copies of the scrolls in the 7719 Design, because plaintiff's designer added unique shading to the tips of the scrolls.  This shading enhances the impression that the scrolls are curling over upon themselves.  Further, plaintiff contends that the two-scroll configuration in the 7725 Design (which is not found in any third party designs) differs significantly from a similar configuration in the 7719 Design because in the former, one of the two scrolls is depicted only in part.

Mindful that only a "dash" of originality is required, the court finds that there is a fact issue as to whether the shaded scroll tips and the arrangement of the scrolls merit copyright protection.

### 2. The Flower

Defendants contend that the flower in the 7725 Design is a derivative work based on an earlier Klauber lace design, the 1065 Design. Plaintiff's designer testified that the flower in the 7725 Design is a "simplified version" of the flower in the 1065 Design. (Citrone Tr. at 49.) The flower, furthermore, incorporates a graphical depiction of petals "folding over" upon themselves. Plaintiff's designer testified that, in order to draw the petals folding over upon themselves in the 1065 Design, she studied the 1900 Design from a picture in a book. (Id. at 64-67.)

However, defendants have not established that the flower in the 7725 Design is unprotectable in its entirety. The flower in the 7725 Design, while admittedly inspired by the flower in the 1065 Design, is less detailed. The petals are positioned differently. Furthermore, the "fold-over" petal element does not appear on side-by-side examination to have been mechanistically copied from the 1900 Design. And plaintiff's designer did not admit to copying it. Instead, she testified as follows: "I don't know what each flower looks like until I study it. So there's a number of roses on this page. And once I studied it, I was able to draw my roses

for 1065." (Id. at 67.)  This suggests that the "fold over" element was not a copied element.

Defendants have not shown as a matter of law that the flower in the 7725 Design is so devoid of originality that it is not protectable against exact copying.

### 3. The Leaves

Defendants assert, with surprising brevity, that the leaf elements of the 7725 Design are not original.  However, the particular orientation of the leaves relative to the flowers appears only in the 7725 Design, not in the previous Klauber designs or in any public domain designs.  Thus, defendants have not shown that the leaves are unprotectable.

### 4. The White and Black Scallop Patterns

Defendants contend that the scalloped edge in the 7725 Design is not copyrightable because it is in part dictated by functional requirements of lace, and is otherwise unoriginal.  The design contains a light-shaded "false" scallop portion which veers back and forth from the edge of the lace, as well as dark shaded scallops at the portions of the edge of the lace where the light-shaded "false" scallop has veered away from the edge of the lace. (Citrone Tr. at 53-56; see also Ex. 1.)  Plaintiff's designer testified that the dark-shaded scallops were necessitated by functional requirements of lacemaking, and that the light-shaded scallops, which made the design

more visually interesting, were a motif she "would have to think . . . you would use" if you designed scallops for a long time.  (Id. at 55-56.)

Defendants construe plaintiff's designer's testimony as an admission that the 7725 Design was either unoriginal or was dictated by functional requirements.  However, the statement is of little legal significance. Defendants have not produced any other lace with a similar scallop design. (See Susman Decl. Exs. M-P, T.)  Furthermore, while the scallops hewing to the outer edge of lace are present for functional reasons, the light-shaded "false" scallops are admittedly not.  They appear to veer back and forth from the edge of the lace, framing the flowers in an aesthetic way. Defendants have not shown that the scallop patterns are wholly unprotectable as a matter of law.

### 5. Arrangement as a Whole and Other Aspects of Design

Defendants rightly argue that the 7725 Design's pattern of repeating its design elements with alternating orientations is an unoriginal feature of many designs.  However, an issue of fact remains as to whether there is protectable original content in the precise configuration and relative spacing of the various elements including the flower, leaves, and scrolls.

### C. Whether the 7725 Design is an Unprotectable Design for a Useful Article

In this Circuit, graphical textile designs are protectable because they are considered "writings."  See, e.g., Folio Impressions, 937 F.2d at 763;

see also Eve of Milady v. Impression Bridal, Inc., 957 F. Supp. 484, 488 (S.D.N.Y. 1997) (lace design protectable).

However, under the copyright statute, designs for "useful articles" are not protectable.  17 U.S.C. § 101.  A useful article is one with "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information."  Id.  Articles of clothing are useful articles, and clothing designs are therefore not generally protectable.  See, e.g., Jovani Fashion, Ltd. v. Fiesta Fashions, 500 F. App'x 42, 44-45 (2d Cir. 2012).

There is an exception to this rule.  Designs for useful articles may be protectable "if, and only to the extent that, [the] design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  17 U.S.C. § 101.  Such separability may be physical, meaning that the design can be actually detached from the useful article and sold separately.  See Carol Barnhart Inc. v. Economy Clover Corp., 773 F.2d 411, 421 (2d Cir. 1985) (Newman, J., dissenting) (discussing the example of a hood ornament on a car, which can be removed without harming the utility of the car).  Alternatively, a design may evince "conceptual" separability, meaning that it has identifiable features that were designed independent of functional considerations and which are

capable of existing apart from the useful article.  See <u>Chosun Int'l, Inc. v.</u> <u>Chrisha Creations, Ltd.</u>, 413 F.3d 324, 329 (2d Cir. 2005) ("[D]esign elements that can be conceptualized as existing independently of their utilitarian function are eligible for copyright protection.") (internal quotation marks and citation omitted).  The Second Circuit explains further:

> "[I]f design elements reflect a merger of aesthetic and functional considerations, the artistic aspects of a work cannot be said to be conceptually separable from the utilitarian elements. Conversely, where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists."

<u>Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.</u>, 834 F.2d 1142, 1145 (2d Cir. 1987).

Designs falling within the conceptual separability exception include sculptural belt buckles, <u>Kieselstein-Cord v. Accessories by Pearl, Inc.</u>, 632 F.2d 989, 991 (2d Cir. 1980).  On the other hand, designs not falling within the conceptual separability exception include designs for prom dresses and distinctively-shaped bicycle racks.  See <u>Whimsicality, Inc. v. Rubie's</u> <u>Costume Co., Inc.</u>, 891 F.2d 452, 455-56 (2d Cir. 1989); <u>Brandir</u>, 834 F.2d at 1145.

Here, defendants argue that the 7725 Design is not conceptually separable from the useful article of a waistband, and is therefore

unprotectable.  Defendants point to the testimony of textile expert Robert Beaulieu, who stated that the 7725 Design is a functional part of a garment.  (Beaulieu Tr. at 127-138.)  Beaulieu also noted that the lace design is not separable from the physical structure of the lace.  (Id.) Defendants point additionally to the testimony of plaintiff's designer, who stated that certain aspects of the design were influenced by functional limitations relating to the inherent structure of lace.  (Citrone Tr. at 52-54.)  Plaintiff's designer stated further that the 7725 Design was created with the intention that it would serve as a waistband.  (Id. at 41.)

Plaintiff counters that the 7725 Design is conceptually separable. The 7725 Design could serve as something other than a waistband, such as decorative trim, or an ornamental object.  Further, plaintiff observes that the lace in the 7725 Design could conceivably be produced without elastic components—meaning that it would not function as a waistband—without altering the graphical patterns in the lace.  Plaintiff admits that functional considerations informed parts of the 7725 Design, but contends that these functional considerations neither dictated the design nor limited the scope of the designer's creativity.  (Opp. Br. at 16.)

Plaintiff has the better of the argument.  The court finds that the 7725 Design is, at least in part, conceptually separable from the functional article of the waistband, because it is essentially a writing in the form of

lace.   To be sure, the 7725 Design reflects certain functional considerations because it was intended for a waistband.  The elements of the design that reflect these considerations, such as the portions of the scalloped edge design which serve structural purposes, are therefore not protectable in themselves.  But the design also incorporates pictorial and graphical elements eminently capable of standing alone and apart from an undergarment waistband.   These elements—the details in the flowers, leaves, stems, the light-shaded "false" scallops which do not serve a structural purpose, and the arrangement of these elements relative to one another—are closely similar to textile designs.  See Folio Impressions, 937 F.2d at 763.  It is these elements that are protectable.  Like graphical designs in fabric or other media, these elements of the 7725 Design naturally reflect certain constraints of their medium, but they nonetheless embody the exercise of a designer's aesthetic judgment independent of functional considerations.

Further, the 7725 Design is distinguishable from clothing designs such as dress designs.   First, as discussed, it possesses a creative graphical and pictorial character which stands alone and apart from its application as a useful article, making akin to a textile design and distinguishing it from clothing designs and industrial designs.  Second, if the 7725 Design were used as something other than a waistband, like a

decorative trim, it would not remain obviously recognizable as an undergarment waistband.  This is important because the Second Circuit has rejected attempts to copyright clothing designs by implausibly re-characterizing them as things they are not.  <u>See, e.g.</u>, <u>Whimsicality</u>, 891 F.2d at 455-56 (rejecting an attempt to characterize costumes as "soft sculptures"); <u>see also</u> <u>Carol Barnhart</u>, 773 F.2d at 419 (rejecting attempt to characterize human torso-shaped mannequins as sculptures).  But while imagining a costume design to be a soft sculpture requires an artificial suspension of disbelief, imagining the 7725 Design as a decorative trim does not.  The design is therefore conceptually separable, in part, from the useful article of a waistband.  It "incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  17 U.S.C. § 101.

Moreover, it is not dispositive that plaintiff's designer admittedly intended the 7725 Design to be a waistband.  That fact does not distinguish the 7725 Design from the protectable designs for sculptural belt buckles in <u>Kieselstein-Cord</u>, 632 F.2d 989, which were also clearly designed with the intent of serving as useful articles.  A separability analysis looks at the characteristics of the design itself and does not focus exclusively on the mind of the designer.

In light of the above, the court rejects defendants' argument that the entire 7725 Design is an unprotectable design for a useful article.

### D. Whether Defendants' Designs are Substantially Similar to the 7725 Design

Defendants argue that the accused designs cannot infringe because they are not substantially similar to the 7725 Design after the latter is stripped of public domain and functional elements.

In order to demonstrate unauthorized copying, a plaintiff must establish "substantial similarity" between the copyrighted work and the work accused of infringing.  Castle Rock, 150 F.3d at 137-38.  In the Second Circuit, the "test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same."  Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 66 (2d Cir. 2010) (internal quotation omitted).  This "ordinary observer" test asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  Knitwaves, Inc., 71 F.3d at 1002 (internal quotation omitted).  However, where a work incorporates both protectable and unprotectable elements, the analysis must be "more discerning."  Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp., 25 F.3d 119, 123 (2d Cir. 1994).  Under the "more discerning" test, the court must "extract the unprotectable elements from

[its] consideration and ask whether the protectable elements, standing alone, are substantially similar." <u>Knitwaves, Inc.</u>, 71 F.3d at 1002 (emphasis omitted).







Here, the 7725 Design incorporates unprotectable elements, so the "more discerning" test must be applied.  However, as discussed in the originality analysis, defendants have failed to show that the 7725 Design is devoid of protectable elements.  And a side-by-side comparison plainly reveals that the accused designs copied the 7725 Design completely and exactly.  (See supra, Plaintiff's Depo. Exs. 2, 3, 24.)

If the accused designs had departed even slightly from the 7725 Design, the court might be faced with a more difficult question about whether they infringed the protectable elements of plaintiff's design.  But where, as here, the copying is nearly exact, any reasonable jury would find substantial similarity.

## Conclusion

The motion for summary judgment is denied.  This resolves the motion listed as number 39 in this case.

This opinion was filed under seal on June 2, 2015.  The parties were afforded an opportunity to request redactions, and declined to do so.

So ordered.

Dated:  New York, New York
        July 16, 2015

_____

Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/16/15

20

**Exhibit 1:  The 7725 Design**



**Exhibit 2:  The 1065 Design**



**Exhibit 3:  The 7719 Design**



**Exhibit 4:  The 1900 Design**

